UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-209-GWU

ROBERT MUNCY,                                                           PLAINTIFF,


VS.                         **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                       DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Muncy

    4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

    5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

    6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

    7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

Muncy

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

Muncy

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Muncy

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  <u>Id</u>. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

Muncy

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." <u>Abbott v. Sullivan</u>, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  <u>Ibid</u>.  In such cases, the agency may be required to consult a vocational specialist.  <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments.  Varley  v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Robert Muncy, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of C5-C6 disc protrusions, Hepatitis C, "mild bulging lumbar spine," and a mood disorder.  (Tr. 25).  Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Muncy retained the residual functional capacity to return to his past relevant work as a meter reader and account specialist and, therefore, was not entitled to benefits.  (Tr. 26-9).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were capable of medium level exertion, occasional climbing, no overhead reaching, but still needed to avoid vibratory tools and equipment and hazardous machinery, and required a job having little interaction with the general public and co-workers.  (Tr. 520).  The VE responded that such a person could perform the plaintiff's past relevant work.  (Id.).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Muncy

Although Mr. Muncy testified that he stopped working in May, 2003, two months after being diagnosed with Hepatitis C for which he received six months of Interferon treatment from the University of Kentucky Medical Center (UKMC) (Tr. 228-9, 510-11), UKMC notes indicate that following the completion of treatment in 2004 he had normal liver function studies, was asymptomatic, and had "no significant complaints." (Tr. 210-11, 216, 222-3).

Mr. Muncy testified that he had neck and arm pain resulting from a fractured cervical vertebra (Tr. 501), but the fracture had occurred in a 1988 motorcycle accident (Tr. 281-2), after which he returned to work for 15 years. Mr. Muncy's treating family physician, Dr. George Chaney, noted complaints of "moderate neck pain" well before the alleged onset date, e.g. in an April 25, 2002 office note, indicated they were from a "remote trauma" and found only "mild" muscle spasms, with no abnormal neurological signs or trigger points. (Tr. 344-5). His examination was the same in May, 2003, at the time the plaintiff stopped working (Tr. 330), as well as later in the year (e.g., Tr. 319).

Dr. John Gilbert, a neurosurgeon, examined Mr. Muncy on November 3, 2003, during the period after the alleged onset date, and found head, neck and spine tenderness, but normal sensation and reflexes. (Tr. 148). He reviewed a lumbar MRI scan, which had been interpreted by the radiologist as showing mild bulging discs, and a cervical MRI which had been interpreted showing disc "protrusions" at C5-6 with "minimal" indentation of the cervical cord (Tr. 434-5). Dr. Gilbert

interpreted the lumbar MRI as showing no disc ruptures, but he felt that there was a C5-6 rupture which was surgical, and gave the plaintiff information on a diskectomy and fusion, which Mr. Muncy declined to have. (Id.).

Dr. Denes Martonffy, an associate of Dr. Gilbert, examined the plaintiff in January, 2004, found no changes, and provided a statement "verifying that he is totally and permanently disabled to engage in any type of gainful employment due to an old C2 fracture, disc rupture at C5-6, and acute Hepatitis C." (Tr. 146-7).

Dr. Mark Burns performed a consultative physical examination on April 24, 2004 and found no abnormalities. (Tr. 158-61). He found no evidence for functional restrictions. (Tr. 161).

State agency physicians who examined the record opined that Mr. Muncy would be capable of medium level exertion, with occasional climbing of ladders, ropes, and scaffolds and crawling, was limited to occasional reaching overhead, and needed to avoid concentrated exposure to vibration and hazards. (Tr. 182-9, 373-8). The ALJ followed these restrictions in the hypothetical question.

Dr. Robert J. Fitz, a psychologist, conducted a consultative mental health examination on April 20, 2004, and the plaintiff noted that he had been depressed due to family stressors and, to a certain extent, from Interferon, but was on antidepressant medication and the condition appeared to be "pretty well controlled." (Tr. 152-3). His mood was described as generally euthymic with episodes of mild dysphoria. (Tr. 156). Dr. Fitz diagnosed Interferon-induced mood disorder with

depressive features, and alcohol dependence in full sustained remission, with a Global Assessment of Functioning (GAF) score of 70. (Tr. 156-7). A GAF score in this range reflects only mild symptoms. Diagnostic and Statistical Manual of Mental Disorders (4th Edition-Text Revision), p. 34. Dr. Fitz opined that the plaintiff would have only a "fair" ability to tolerate stress and pressures of day-to-day work activity because of pain, although "fair" was not defined. (Tr. 157). State agency psychologists who reviewed the record indicated only that the plaintiff would have a "moderately limited" ability to get along with co-workers and peers without distracting them or exhibiting behavioral extremes. (Tr. 177-9, 394-6). The hypothetical question was consistent with their opinion.

Following a motor vehicle accident in May, 2004, Dr. Chaney indicated that the plaintiff complained of moderate head and neck pain, and he found a reduced range of motion on examination, but normal strength; there were no neurological abnormalities except for reduced sensation in the right forearm and middle finger. (Tr. 301-2). Cervical x-rays and a CT scan were apparently normal except for degenerative joint disease. (Tr. 302). Dr. Chaney gave a deposition for workers compensation purposes on June 7, 2004, and testified that, although neurosurgeons had not recommended surgery, Dr. Martonffy had said that Mr. Muncy was totally and permanently disabled due to a disc fracture and rupture. (Tr. 198). Dr. Chaney opined that Mr. Muncy should not lift and carry more than 10 pounds on a frequent basis. (Tr. 194). He felt that Mr. Muncy's complaints of fatigue were consistent with

Muncy

his diagnosis of Hepatitis C, and that the side effects from his treatment alone were enough to keep him from working. (Tr. 201-2). However, Chaney's commentary was made prior to the completion of his Interferon treatment and the statements from UKMC sources that Mr. Muncy was asymptomatic.

Mr. Muncy continued to complain of head, neck, back pain, numbness and tingling in both arms, particularly on the right, and in both legs and feet, but Dr. Chaney's examination on January 3, 2005 indicated that he was in no apparent distress, had intact reflexes, a somewhat reduced range of motion of the neck, and the same reduced sensation of the right forearm and middle finger. (Tr. 428-9). On referral from Dr. Chaney, Dr. Gilbert again examined Mr. Muncy on January 5, 2005, and reviewed new MRI reports from December, 2004 (Tr. 432-3) showing "mild" bulging in the cervical spine and a protrusion at L5-S1 (Tr. 412). However, despite the plaintiff's subjective complaints, Dr. Gilbert's examination was completely normal except for tenderness on palpation of the neck. Specifically, he found no sensory or reflex deficits, no spasms, a normal range of motion, negative straight leg raising, and a negative Spurling's test in both upper extremities. (Id.). He interpreted the MRIs as showing only "slight change" from the prior scans. (Id.). He provided information on facet blocks, but did not prescribe any medications and did not discuss disability or functional limitations. (Tr. 413).

Mr. Muncy also complained of left knee pain late in 2004. Dr. Chaney found effusion and tenderness on examination, scheduled an MRI, and referred his patient

to an orthopedist, Dr. George Williamson. (Tr. 406-7). Dr. Williamson examined the plaintiff on January 13, 2005 and noted that the MRI "has been read as a vertical tear involving the posterior horn of the medial meniscus" along with a bone contusion. (Tr. 431). However, his examination showed no effusion, a normal and "pain-free" range of motion, no evidence of any ligament instability, and no evidence of internal derangement, fracture, or dislocation. Dr. Williamson advised against arthroscopy and advised Mr. Muncy to "leave this alone and see what happens" unless he became unable to carry on his daily activities. (Id.).

Dr. Chaney provided a series of functional capacity opinions in May, 2005, getting the plaintiff's diagnoses as anxiety and depression, chronic obstructive pulmonary disease, cervical and lumbar radiculopathy, an old fracture of C2, internal derangement of the knee, cervical and lumbar disc disease, hypertension, hearing loss, visual loss, and Hepatitis C. (Tr. 463-4). He indicated that these conditions would provide no more than "moderate" functional limitations. (Tr. 464). However, he further stated that the plaintiff would be limited to lifting no more than 20 pounds occasionally and 10 pounds frequently, performing less than full-time standing and walking, "occasional" climbing, balancing, stooping, crouching, kneeling, and crawling, and having limitations on reaching, handling, feeling, pushing, pulling, seeing, and hearing, and having environmental restrictions on heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes, humidity, and vibration. (Tr. 464-5). On the same day, Dr. Chaney also completed other functional

capacity forms limiting the plaintiff to lifting no more than 10 pounds occasionally and less than 10 pounds frequently. He also opined that the plaintiff would be "seriously limited but not precluded" in many areas of psychological functioning. (Tr. 466, 478-9).

The ALJ declined to accept Dr. Chaney's restrictions because they were "not fully supported and are totally inconsistent with other clinical findings of record" including the examinations by Dr. Burns and Dr. Fitz. (Tr. 26). He also noted that Dr. Chaney had described the plaintiff's mental impairments as "moderate". The plaintiff argues on appeal that it was error to reject the opinion of the treating physician. Normally, the opinion of the treating physician is entitled to great weight, but it is not entitled to controlling weight under all circumstances. Dr. Chaney's opinions, although strongly supporting disability, were internally inconsistent. In addition to the inconsistency between describing the plaintiff's conditions as resulting in "moderate" functional restrictions, and then limiting him from full-time work, Dr. Chaney also gave inconsistent lifting restrictions on reports filled out on the same day, as previously described. Moreover, his recent examinations did not show dramatic physical findings, and not only the state agency consultant but the specialists to whom he most recently referred the plaintiff recorded essentially no physical abnormalities, much less findings that would restrict the plaintiff to the degree described by Dr. Chaney. (Tr. 412, 431). While the ALJ's rationale for rejecting Dr. Chaney's opinion was somewhat perfunctory, an ALJ's failure to follow

Muncy

the procedural guidelines of 20 C.F.R. Section 1527(d)(2) does not warrant reversal if it is "so patently deficient that the Commissioner could not possibly credit it." Wilson v. Commissioner of Social Security, 378 F.3d 541, 547 (6th Cir. 2004). Under the particular circumstances of this case, the error was harmless.

The decision will be affirmed.

This the 28th day of February, 2007.

Signed By:

G. Wix Unthank

United States Senior Judge

14